| | |
|---|---|
| ACCELERANCE, INC., <br><br> Plaintiff, <br><br> v. <br><br> APP SOLUTIONS INTERNATIONAL, INC., <br><br> Defendant. | <u>MEMORANDUM & ORDER</u> |

**THIS MATTER** is before the Court on Plaintiff Accelerance, Inc.'s and Defendant App Solutions International, Inc.'s cross-motions for partial summary judgment (Doc. Nos. 35, 40). For the reasons explained below, the Court will grant both motions.

## I.     BACKGROUND

Plaintiff Accelerance, Inc., is a global outsourcing advisor that provides software development resources and professional consulting services. *See* (Doc. No. 37-1 ¶¶ 1–4). Defendant App Solutions International, Inc., is a software developer. *See id.* On or about December 1, 2018, the parties entered into an Agreement (the "Agreement") for Plaintiff to introduce potential clients, referred to as "Qualified Opportunities," to Defendant for Defendant's software development business. (Doc. No. 37-2 at 6). The Agreement defines Qualified Opportunities as:

> [T]he identification of prospective clients ("Clients")
> introduced by [Plaintiff] and accepted by [Defendant] based
> on mutually agreed upon target profiles as may be modified

from time-to-time by the parties,

> which also includes the identification and/or introduction of third-party software developers and other service providers as well as their respective Clients to [Defendant].

(Doc. No. 37-2 at 6).

In exchange for providing Defendant with Qualified Opportunities, Defendant agreed to pay Plaintiff a "Membership Fee" as well as thirteen-percent commission of "any and all revenue generated by" Defendant for thirty-six "Billing Cycles." *Id.* at ¶ 3. The Agreement defines a "Billing Cycle" as "a monthly period in which revenue is generated and billed." *Id.*

On or about July 26, 2020, the parties signed a Professional Services Agreement – Addendum (the "Addendum"). (Doc. No. 37-2 at 12). The one-page Addendum expressly modified a single provision of the Agreement—Section 3(b). *Id.* ¶ 1. In relevant part, the Addendum provided:

> 1. Pursuant to Section 11 of that certain Professional Services Agreement ("Services Agreement"), effective as of December 1, 2018, by and between the parties, the undersigned parties desire to amend the Services Agreement as follows:
>
> Section 3(b) (Commission 1) of the Services Agreement will be replaced in its entirety with the following provision:
>
> Commissions Paid by Software Developer to [Plaintiff].
>
> Commission 1. If [Plaintiff] introduces a Qualified Opportunity to [Defendant], **the Parties will agree to a commission between 15% to 20% of any and all revenue generated by [Defendant], to be paid to [Plaintiff] by [Defendant] for the duration of the relationship between [Defendant] and Qualified Opportunity.** The agreed upon commission percentage for each new Qualified Opportunity

2

> will be mutually confirmed in writing by both Parties through an additional addendum to the Services Agreement, which shall be entitled the Professional Services Agreement – Commission Addendum.
>
> Reimbursable costs such as travel expenses, applicable software licenses and tools costs transferred to [Defendant], or per diem, which is transferred to the [Defendant's] employees are excluded from commission calculations. Payment of the commission to [Plaintiff] will be due within 15 days after receipt of payment by [Defendant] from each Qualified Opportunity introduced to [Defendant] by [Plaintiff].

(Doc. No. 37-2 at 12 ¶ 1) (emphasis added). The parties attached to the Addendum a copy of the "Professional Services Agreement – Commission Addendum." *Id.* at 13. The Addendum also clarified that:

> All other provisions of the Services Agreement remain in full force and effect unless a provision conflicts with the terms and/or **spirit of this Addendum**. To the extent this Addendum and the Services Agreement conflict, the latter is hereby amended appropriately to be consistent with this Addendum.

*Id.* at 12 ¶ 3. (emphasis added).

Despite the language of the Addendum, the parties never executed a "Professional Service Agreement – Commission Addendum." *See* (Doc. No. 41-1at 20 (145:7–23) 36 (184:9–12)). Nevertheless, over the next four years, Plaintiff continued to introduce Qualified Opportunities to Defendant, and in turn, Defendant paid Plaintiff a commission of fifteen percent of the revenue generated from each relationship. *See id.* at 20–21 (145:24–146:4); *see also* (Doc. Nos. 37-1 ¶ 20; 43 at 8).

In spring 2024, Defendant requested to renegotiate the Agreement. (Doc. No. 37-1 at 7–14). During the correspondence, Defendant maintained it understood that

Plaintiff was "only entitled to the 36-month billing cycle for all deals, even after the 2020 Addendum." *Id.* at 13. Plaintiff, on the other hand, asserted the Addendum's terms unambiguously modified the terms of the Agreement to require "15% commission for the length of the relationship." *See id.* at 11. Ultimately, on June 19, 2024, Defendant sent Plaintiff a letter that would "serve as notice of non-renewal and/or termination of the Agreement pursuant to Section 4 of the Agreement." *Id.* at 5 ¶ 24; *see also* (Doc. No. 16-3 at 3).

On September 5, 2024, Plaintiff filed its Complaint against Defendant, asserting claims for breach of contract and declaratory judgment. (Doc. No. 1). On October 14, 2024, Defendant sent Plaintiff a letter "unconditionally retract[ing] its repudiation of the payment terms described in the Addendum" and indicated that Defendant would continue paying commissions "due under the Agreement, even beyond the 36-month term originally agreed." (Doc. No. 16-5 at 2); *see also* (Doc. Nos. 21 ¶¶ 58–59; 37-1 at 5 ¶ 25). On January 22, 2025, Defendant filed its answer and brought a counterclaim for declaratory relief. (Doc. No. 13 at 1, 8–12).

On September 3, 2025, Defendant filed a motion for partial summary judgment. (Doc. No. 35). On October 30, 2025, Plaintiff also filed a motion for partial summary judgment. (Doc. No. 40). On March 18, 2026, the Court heard argument on the motions during a status conference. At the time of the hearing, the parties informed the Court that Defendant had paid Plaintiff all commissions owed to Plaintiff under Plaintiff's interpretation of the contract. Both parties' motions are fully briefed and ripe for disposition by the Court.

4

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Va.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Constr. Co.,* 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment is warranted); *see also United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022) (same). "If the movant satisfies his initial burden to demonstrate 'an absence of evidence to support the nonmoving party's case,' the burden shifts to the nonmovant to 'present specific facts showing that there is a

5

genuine issue for trial.'" *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 247–48). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, inter alia, "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *See Anderson*, 477 U.S. at 255. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation modified). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Wright & Miller's Federal Practice & Procedure § 2728 (3d ed. 1998)).

The overall inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

6

that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.  DISCUSSION

### A.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment in its favor on Count II of the Amended Complaint. (Doc. No. 40). Specifically, Plaintiff requests that the Court declare that the Agreement, including the Addendum, represents a valid and enforceable contract between the parties. *Id.* ¶¶ 5, 7. In response, Defendant argues the Addendum is unenforceable because of a lack of consideration and the parties' failure to agree to key terms. (Doc. No. 43 at 1–4). As explained below, the Court agrees with Plaintiff. The Agreement, as modified by the Addendum, is a valid and enforceable contract, and the Court will grant partial summary judgment in favor of Plaintiff as to Count II.[1]

#### 1.  Consideration

Under North Carolina law, "[p]arties to a contract may agree to change its terms; but the new agreement, to be effective, must contain the elements necessary to the formation of a contract." *NRC Golf Course, LLC v. JMR Golf, LLC*, 731 S.E.2d 474, 480 (N.C. Ct. App. 2012) (quoting *S. Spindle and Flyer Co.*, 281 S.E.2d 734, 736 (N.C. Ct. App. 1981)). Accordingly, "a modification to a contract must be supported by consideration." *Id.* (quoting *Sessler v. Marsh*, 551 S.E.2d 160, 166–67 (N.C. Ct.

---

[1] Plaintiff also requested in Count II that the Court declare "Section 10 of the Agreement's limitation of liability provision does not limit Plaintiff's recovery in any fashion." (Doc. No. 16 ¶ 77). Plaintiff did not seek summary judgment on that issue, and it is therefore outside the scope of the Court's ruling on Plaintiff's motion. *See* (Doc. No. 41 at 2 n.1).

App. 2001)). "Consideration 'consists of 'any benefit, right, or interest bestowed upon the promisor, or any forbearance, detriment, or loss undertaken by the promisee." *Sessler*, 551 S.E.2d at 167 (quoting *Lee v. Paragon Grp. Contractors, Inc.*, 337 S.E.2d 132 (N.C. Ct. App. 1985), *disc. review denied*, 345 S.E.2d 383 (N.C. 1986)).

In this case, the Court finds the Agreement, as modified by the Addendum, is supported by consideration. Under the Addendum, Plaintiff received a higher commission percentage for a longer period of time than originally provided for in the Agreement. Defendant, on the other hand, received the express right to exclude reimbursable expenses from the commission calculation. Thus, sufficient consideration supports the Addendum's modification of the Agreement.

The Court is unpersuaded by Defendant's argument to the contrary. Defendant asserts that "a promise not to charge commissions on reimbursable expenses . . . [was] already a part of the Original Agreement" (Doc. No. 43 at 12) and cites to cases where the alleged consideration was already a part of the agreement. *See, e.g.*, (Doc. No. 43 at 10–15) (citing *NRC Golf Course, LLC*, 731 S.E.2d at 481 and *Frankenmuth Mut. Ins. Co. v. Nat'l Bridge Builders, LLC*, No. 1:22-cv-00024-MR-WCM, 2024 WL 116431 (W.D.N.C. Jan. 10, 2024)). But Defendant's argument overstates the Agreement between the parties. Defendant did not have a contractual right to exclude reimbursable costs from the commission calculation under the Agreement. In fact, the Agreement did not mention reimbursable costs at all. Now under the Addendum, Defendant has the express right to exclude those costs.[2] For these reasons, the Court

---

[2] Defendant also relies on *McGuire v. Lord Corp.*, No. 19 CVS 11634, 2020 WL 698562 (N.C. Super. Ct., Feb. 11, 2020) to argue that because, as a matter of practice, it had

Case 3:24-cv-00806-MEO-WCM    Document 61    Filed 07/29/26    Page 8 of 17

concludes that sufficient consideration supports the Addendum as a modification of the Agreement.

### 2. Mutual Assent to Key Terms

Defendant next challenges whether there was sufficient mutual assent between the parties to form a valid contract. Defendant asserts that the Addendum failed to reflect a meeting of the minds on two key terms: the commission percentage as well as the meaning of "duration of the relationship." The Court disagrees.

Under North Carolina law, "it is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Charlotte Motor Speedway, LLC, v. Cnty. of Cabarrus,* 748 S.E.2d 171, 176 (N.C. Ct. App. 2013) (quoting *Northington v. Michelotti*, 464 S.E.2d 711, 714 (N.C. Ct. App. 1995)). Essential terms must be "definite within themselves or capable of being made definite." *Brawley v. Brawley*, 361 S.E.2d 759, 762 (N.C. Ct. App. 1987), *disc. review denied*, 364 S.E.2d 918 (N.C. 1988) (citing *Horton v. Humble Oil & Refin. Co.*, 122 S.E.2d 716 (N.C. 1961)). "[A]

---

not been paying commissions on reimbursable expenses at the time of the Addendum's execution, consideration was insufficient. *See* (Doc. No. 43 at 12–13) ("[S]tating a fact that had already existed is not sufficient to provide consideration."). Defendant overstates the holding of *McGuire*. In that case, the plaintiff sought to "convert an e-mail exchange requesting and conveying information about [a stock program] Plan's terms into a new contract that contravenes the express terms of the Plan and the Agreement." *McGuire*, 2020 WL 698562, at *5. After holding the email exchange did not constitute an offer, the *McGuire* court noted in passing that "even if the e-mail exchange could be read as creating the alleged New Contract, [Plaintiff] has not pleaded any facts showing that [Defendant] received any benefit, right, or interest for its alleged promise or any forbearance, detriment, or loss undertaken by [Defendant]." *Id.* The Court never held that a new express contractual right could not serve as consideration.

contract will not be held unenforceable because of uncertainty if the intent of the parties can be determined from the language used, construed with reference to the circumstances surrounding the making of the contract, and its terms reduced to a reasonable certainty." *Brawley*, 361 S.E.2d at 762. But "where the language used in the contract is clear and unambiguous, the intention of the parties is to be gathered from the face of the contract." *Id.* In addition, "[w]hen a party affixes his signature to a contract, he is manifesting his assent to the contract." *Mosely v. WAM, Inc.*, 606 S.E.2d 140, 143 (N.C. Ct. App. 2004).

In this case, the Addendum—signed by both parties—requires Defendant to pay a commission of between fifteen to twenty percent of the revenue generated on Qualified Opportunities. (Doc. No. 37-2 at 12 ¶ 1). The Addendum then directs the parties to "mutually confirm[ ] [the agreed upon commission percentage] in writing . . . through an additional addendum to the Service Agreement" for each new Qualified Opportunity. *Id.* There is no dispute that the parties never executed an additional addendum.

Citing to *Boyce v. McMahan*, 208 S.E.2d 692, 695 (N.C. 1974), Defendant argues the Addendum is an "agreement to agree" because it includes language reflecting an intention to make a future written agreement. (Doc. No. 43 at 16–17). However, Defendant's reliance on *Boyce* is misplaced. North Carolina law does not deem every contract that references future actions by parties unenforceable. *See Augusta Homes, Inc. v. Feuerstein*, 682 S.E.2d 247 (table), No. COA08-1456, 2009 WL 2501399, at *5 (N.C. Ct. App. Aug. 8, 2009) (holding that a contract existed

10

between the parties even though the contract included "the express accord that further documentation and negotiation" would occur at a later date). Instead, "a contract that the parties expect to formalize is not rendered invalid simply because the parties do not subsequently execute such a formal agreement so long as the parties assent to the same thing in the same sense, and their minds meet as to all the [material] terms." *Podrebarac v. Horack, Talley, Pharr & Lowndes, P.A.*, 866 S.E.2d 495, 497–98 (N.C. Ct. App. 2021) (citation modified). Here, the plain language of the Addendum demonstrates a meeting of the minds as to the commission percentage— a minimum fifteen percent. A reference to the parties later memorializing the final commission percentage does not render the Addendum invalid.[3] Thus, the Court concludes that there was a sufficient meeting of the minds as to the commission rate outlined in the Addendum.

The Court is also unpersuaded by Defendant's argument the Addendum is unenforceable because the parties never agreed to the meaning of the "duration of the relationship." (Doc. No. 43 at 20–22). Under the Agreement's original Section 3(b) (Commission 1), commission payments were to be made for "thirty-six (36) Billing Cycles." (Doc. No. 37-2 at 6). Section 3(b) then defined a Billing Cycle as "a monthly period in which revenue is generated and billed. If no revenue is generated in a monthly period, then that is not considered, for this Agreement, a Billing Cycle." *Id.*

---

[3] This is not a case where a party was "trapped by the Agreement in surprise contractual obligations that they never intended." *Augusta Homes*, 682 S.E.2d at 247, 2009 WL 2501399, at *5. Consistent with the plain language of the Addendum, Defendant paid fifteen-percent commissions for years prior to disputing the validity of the Addendum.

The Addendum, in modifying Section 3(b) (Commission 1), removed the reference to thirty-six Billing Cycles, replacing it with the "duration of the relationship between [Defendant] and Qualified Opportunity." *Id.* at 12 ¶ 1. Citing to deposition testimony of Plaintiff's representative, Defendant contends that new term, "duration of the relationship," could have many meanings including relating back to the Agreement's original thirty-six month period. (Doc. No. 43 at 20–21).

The fundamental principles of contract interpretation guide the Court's analysis. Under North Carolina law, "[w]ritten contracts 'are to be construed and enforced according to their terms.'" *Galloway v. Snell*, 885 S.E.2d 834, 836 (N.C. 2023) (quoting *Gould Morris Elec. Co. v. Atl. Fire Ins. Co.*, 50 S.E.2d 295, 297 (N.C. 1948)). "When the language of a contract is clear and unambiguous, effect must be given to its terms, and its terms may not be contradicted by parol or extrinsic evidence." *Galloway*, 885 S.E.2d at 836 (citation modified). "The terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense, and harmoniously construed to give every word and every provision effect." *Id.* (citation modified). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Id.* (quoting *Register v. White*, 599 S.E.2d 549, 553 (N.C. 2004)).

Here, the Court finds "duration of the relationship" is an unambiguous term. Duration means "the time during which something exists or lasts,"[4] while "relationship" refers to "the state of being related or interrelated."[5] Defendant and the Qualified Opportunity are related through business. Accordingly, the term "duration of the relationship," requires Defendant to pay commissions to Plaintiff for as long as Defendant's business with the Qualified Opportunity exists. Defendant's interpretation would not give the term "duration" its plain and ordinary meaning. Rather Defendant's interpretation would require the Court to apply a temporal limitation that simply does not exist in the contract. This interpretation would violate the principle that a "contract must be construed to mean what on its face it purports to mean." *Galloway*, 885 S.E.2d at 838 (citing *Hagler v. Hagler*, 354 S.E.2d 228, 234 (N.C. 1987)).[6] Accordingly, the Court finds the Agreement, including the Addendum, is a valid and enforceable contract.[7]

---

[4] *Duration*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/duration (last visited July 23, 2026)

[5] *Relationship*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/relationship (last visited July 23, 2026).

[6] Tellingly, while Defendant proffered many possible meanings for "duration of the relationship," Defendant failed to explain how any of those alternate interpretations would be reasonable under the circumstances. For example, Defendant suggests, without explanation, that even though the parties explicitly modified the commissions period from "thirty-six (36) Billing Cycles" to the "duration of the relationship," the parties never intended to change that term of the Agreement from the original thirty-six month period. (Doc. No. 43 at 20–21).

[7] Because the Court finds sufficient mutual assent, the Court does not reach Plaintiff's argument regarding quasi-estoppel. *See* (Doc. No. 41 at 15–17).

### B. Defendant's Motion for Partial Summary Judgment

Having determined that the Addendum is enforceable, the Court now turns to Defendant's Partial Motion for Summary Judgment. (Doc. No. 35). In its motion, Defendant requests the Court enter summary declaratory judgment in favor of Defendant, finding that the limitation of liability in Section 10 of the Agreement is enforceable and that Plaintiff is precluded from recovering in excess of the express limitations of Section 10. *Id.* at 3. As discussed below, the Court agrees Section 10 is enforceable.

The central issue before the Court in Defendant's motion is how the Addendum affects Section 10's limitation of liability provision. Defendant argues that the Addendum and Section 10 do not conflict such that Section 10's limitation of liability provision remains operative. Plaintiff, on the other hand, asserts the "spirit of [the] Addendum" clause modified Section 10's limitation of liability regarding commissions.[8]

Applying North Carolina principles of contract interpretation, the Court again begins its analysis with the language of the contract. Section 10 of the Agreement provides:

> [N]either one of the parties, its affiliates, representatives nor employees will be liable to the other party for any claims, liabilities or expenses relating to this Agreement for an aggregate amount in excess of the fees paid by [Defendant] to [Plaintiff] under this Agreement in the three (3) months preceding the claim giving rise to such liability.

---

[8] Plaintiff asserts the meaning of "spirit of this Addendum" is not appropriate for summary judgment and should be decided by a jury. (Doc. No. 37 at 16).

(Doc. No. 37-2 at 8 ¶ 10).

The Addendum does not include any reference to Section 10 or include any language regarding limitation of liability. Instead, the Addendum only explicitly replaces Section 3(b) Commission provision:

> Pursuant to Section 11 of that certain Professional Services Agreement ("Services Agreement"), effective as of December 1, 2018, by and between the parties, the undersigned parties desire to amend the Services Agreement as follows:
>
> **Section 3(b) (Commission 1) of the Services Agreement will be replaced in its entirety with the following provision** . . . .

(Doc. No. 37-2 at 12 ¶ 1) (emphasis added). Based on the unambiguous, plain language, the Court finds that the Addendum did not modify Section 10, and the Agreement's limitation of liability provision remains enforceable.

Plaintiff's argument to the contrary is unpersuasive. Plaintiff relies on the second paragraph of the Addendum, which provides that "[a]ll other provisions of the Services Agreement remain in full force and effect unless a provision conflicts with the terms and/or spirit of this Addendum." (Doc. No. 37-2 at 12 ¶ 3). Plaintiff argues that the Addendum's purpose was to ensure it was fairly compensated for providing Qualified Opportunities to Defendant by expanding the payment term from thirty-six months to the "duration of the relationship." (Doc. No. 37 at 13–14). As such, Plaintiff asserts that Section 10's limitation of liability to three month's fees conflicts with the spirit of the Addendum, and Section 10's limitation of liability must therefore be modified to allow Plaintiff to continue receiving commissions after the three-month period. *Id.*

15

Although the Court acknowledges that the parties failed to define the term "spirit of [the] Addendum," the intent of the parties is clear from the face of the contract. The Addendum replaced only Section 3(b)'s Commission provision. *See* (Doc. No. 37-2 at 12 ¶ 1) ("[T]he undersigned parties desire to amend the Services Agreement as follows: Section 3(b) (Commission 1) of the Services Agreement will be replaced in its entirety."). In light of the plain language of the contract, the Court finds that no genuine issue of material fact exists as to whether Section 10 conflicts with the Addendum. There is no conflict, and Section 10's limitation of liability provision is enforceable as written.

Having determined that Section 10 remains enforceable, the Court next turns to the parties' disagreement regarding the scope of the provision. Plaintiff argues that each failure to make a commission payment is an independent claim for the purposes of Section 10's limitation of liability provision. Defendant, on the other hand, argues that Section 10 applies to multiple claims or liabilities (such as when a party repudiates a contract) and limits aggregate recovery.

Here, again, the Court finds the language of the Agreement unambiguously addresses the parties' dispute. The first sentence of Section 10 references "any claims, liabilities or expenses." By referring to "claims" in the plurality, the Agreement contemplates multiple claims being subject to the Section 10 limitation at the same time. This reading is further supported by the contract's reference to "aggregate" liability. In fact, the only time Section 10 references a singular claim is when the contract explains the time period used to calculate the three months of fees. In light

16

of the plain language of the contract, the Court finds Section 10 applies to multiple claims or liabilities and limits the aggregate amount of recovery.

Accordingly, Defendant's motion for partial summary judgment is granted. The limitation of liability in Section 10 of the Agreement is enforceable as explained by the Court.[9]

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Partial Summary Judgment (Doc. No. 35) is **GRANTED**; and

2.  Plaintiff's Motion for Partial Summary Judgment (Doc. No. 40) is **GRANTED**.

3. This case shall **proceed toward trial on the merits of the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED.**

Dated: July 29, 2026

Matthew E. Orso
United States District Judge

---

[9] The Court notes that in its Opposition to Defendant's Motion for Partial Summary Judgment, Plaintiff argued that Section 10 did not limit Plaintiff's claim for attorney's fees under Section 15 of the Agreement. (Doc. No. 37 at 21–23). The Court's ruling on the enforceability of Section 10 does not require the Court to reach the issue of attorneys' fees. The Court declines to reach the issue at this time.